THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ASA MINOR, JR., Defendant-Appellant.

Fifth District No. 81—648

Opinion filed July 20, 1983.

Randy E. Blue and Susan A. Diehl, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Stephen E. Norris and Peter C. Drummond, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

A jury found the defendant, Asa Minor, Jr., guilty of three counts of theft over $150. The defendant was found to have exerted unauthorized control on January 30, 1980, over three automobiles that had been stolen prior to that date from three separate owners. The three automobiles, from which numerous major parts had been removed, were discovered on the day in question in a large building rented by the defendant. The trial court entered judgment and sentenced the defendant to four years in the Department of Corrections on each of the three counts, the sentences to be served concurrently. On appeal defendant raises three issues: (1) whether the trial court abused its discretion in allowing impeachment of the defendant by two prior convictions for tampering with an automobile; (2) whether the trial court committed reversible error by refusing to instruct the jury as to the second paragraph of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed. 1981), the pattern jury instruction on the use of circumstantial evidence; and (3) whether the trial court erred in entering judgments of conviction and sentencing defendant on three counts of theft over $150 where the three offenses arose out of "a single, simultaneous act of unauthorized control."

Defendant contends that the trial court's ruling as to the admissibility of two prior convictions for tampering with an automobile pre-

cluded defendant from testifying in his own behalf. Defendant contends further that the use of two identical convictions, similar to the offense charged, amounted to prosecutorial "overkill" and that the trial court's failure to limit the number of convictions to only one was an abuse of its discretion. Defendant objects particularly to the use of the two prior convictions for tampering with an automobile because of their similarity to the offenses with which defendant was charged, saying, "The defendant's criminal record demonstrates what might be considered a propensity to commit crimes involving automobiles." In his brief on appeal defendant describes his prior convictions as follows:

"The defendant's pre-sentence investigation reported that the defendant had three convictions in the ten years preceding his trial, all of them occurring in Missouri: in 1975, for tampering with an auto, for which he was sentenced to two years in prison; in 1974-75, for possession of a motor vehicle with an altered manufacturer's number, for which he was sentenced to one year in county jail and fined $500; in 1972-73, for tampering with an auto, for which he was sentenced to three years in prison.

In the discussion of the defendant's motion [to preclude the State from using his prior convictions for impeachment], the prosecutor stated that the convictions he intended to introduce for impeachment were the two for tampering with a motor vehicle."

We note parenthetically that defendant was tried initially for these offenses in May of 1980. At that trial defendant undertook his own defense, having the aid of an assistant public defender. Post trial the trial court granted defendant's motion for a new trial because the trial court had not informed defendant with regard to waiver of counsel as required by Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)). A second trial for these offenses in July of 1981 resulted in a mistrial because of a prejudicial newspaper article published during the course of the trial and read by some of the jurors. A third trial was conducted in October of 1981. This appeal is from the judgment entered following the third trial.

In ruling on defendant's motion concerning his prior convictions, the trial court described the two offenses for tampering with an automobile as "akin to theft" and concluded, for that reason, that they were "probative on the issue of credibility." The court stated further:

"And I understand the strategy problem it presents for your client as to whether or not he can take the stand. As a practi-

cal matter, it does not bar him from taking the stand. It simply raises a serious credibility question for the jurors, which after they observe the demeanor of the witness, I'm sure they will be able to resolve in whoever's favor.

Therefore, since it's probative on the issue of credibility and of recent vintage, I feel that it outweighs the prejudicial effect that it may have upon the Defendant and, therefore, allow its use for impeachment purposes."

■■■ In general, crimes punishable by imprisonment in excess of one year or involving dishonesty may be used for impeachment purposes if the trial court determines that the probative value of the prior convictions is not substantially outweighed by the danger of unfair prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) To determine whether the prejudicial effect of a conviction substantially outweighs its probative value the trial court must consider four factors set forth in *Montgomery*: (1) the nature of the crime, that is, whether the prior conviction is relevant to veracity; (2) the nearness or remoteness in time of the conviction to the present trial insofar as it relates to the degree of defendant's rehabilitation; (3) the subsequent career of the defendant insofar as it too relates to the degree of defendant's rehabilitation; and (4) the similarity of the prior conviction to the present charge because such similarity often invites an improper inference of guilt rather than directs attention to the defendant's credibility. (*People v. Blair* (1981), 102 Ill. App. 3d 1018, 429 N.E.2d 1375.) The fourth of these factors has not been deemed by Illinois courts to be conclusively prejudicial, and the courts have frequently allowed impeachment by the use of the same or similar crimes. (*People v. Blair; People v. Garlin* (1981), 101 Ill. App. 3d 716, 428 N.E.2d 697.) Furthermore, the mere fact that a defendant decides not to risk the possibility of prejudicial impeachment does not mean that the ruling was erroneous. *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072.

■■ In the case at bar the trial court's statements made in ruling on the motion refute defendant's claims in his brief. The trial court considered not only the nature of the prior crimes, describing them as "akin to theft," but also the nearness or remoteness in time of the prior convictions, describing them as "of recent vintage." The latter consideration has a bearing on the further factor of defendant's subsequent career. The trial court expressly considered the fourth factor set forth in *Montgomery*, the similarity of the prior convictions to the present charge, and concluded that the jury would have the opportunity to observe defendant's demeanor while testifying, thereby ena-

bling it to determine his credibility. For these reasons we conclude that the trial court properly balanced the impeachment value of the prior convictions against the possible prejudice to the defendant, according to the mandate of *Montgomery,* and did not abuse its discretion in so ruling.

Defendant contends that the evidence against him was entirely circumstantial and, for that reason, the trial court erred in failing to give the second paragraph of IPI Criminal No. 3.02, which provides: "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." Although the committee note to this instruction states, "The second paragraph should be given only when the proof of guilt is entirely circumstantial," the committee note is couched in terms, as was observed in *People v. French* (1978), 59 Ill. App. 3d 353, 361, 375 N.E.2d 502, 508, "limiting the times when it is *permissible* to give the second paragraph and not in terms of stating the times when that paragraph *must* be given." The failure of a trial court to give the second paragraph of the instruction, if it should have been given, does not require reversal unless it appears that justice has been denied or that the verdict resulted from such error. (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 419 N.E.2d 1181; *People v. French*; see *People v. Hanei* (1980), 81 Ill. App. 3d 690, 403 N.E.2d 16, *cert. denied* (1981), 450 U.S. 927, 67 L. Ed. 2d 357, 101 S. Ct. 1382.) To distinguish direct from circumstantial evidence can be difficult. (*People v. Stokes; People v. Davis* (1981), 93 Ill. App. 3d 217, 416 N.E.2d 1197.) We have examined the entire record on appeal in the case at bar and conclude that we need not make the distinction because, assuming that all of the evidence was circumstantial, our review of the record shows that the failure to give the second paragraph of the instruction could have been, at most, harmless error. A different verdict would not have resulted had the instruction been given. Justice was not denied to the defendant, and the omission, if it were error, does not warrant reversal of defendant's convictions.

We do, however, agree with defendant that the trial court should not have entered judgment and sentenced defendant on all three counts of theft over $150. At trial two of the owners of the three vehicles testified to the effect that they had last seen their vehicles on November 19, 1979, and the owner of the third vehicle testified that she had discovered her vehicle missing on January 5, 1980. The indictment, prior to amendment of it by the State, charged defendant with the theft of these vehicles on these dates. Amended, the indictment alleged the theft of the three vehicles by defendant on the same day,

January 30, 1980, the day on which State investigators discovered in the building rented by defendant the three vehicles dismantled there. No evidence was adduced at trial as to who—whether defendant or another—had without authority removed the three vehicles from the places in which they had last been parked by their owners. Defendant argues that "[u]nder the circumstances of this case, it is apparent that the defendant, on a single date, by the single act of control over a building, simultaneously exerted unauthorized control over several different items of stolen property belonging to three owners."

 ██ More than one offense cannot be carved from the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) As the court observed in *People v. Israel* (1915), 269 Ill. 284, 287, 109 N.E. 969, 970, where a defendant was found guilty of receiving property stolen from a warehouse and belonging to two separate owners:

> "Where the offense is one act, fully completed at the same time and place, it is but one crime, however many different kinds of property may be stolen. There is no good reason why such an act may be said to constitute more than one crime because there are two or more separate owners of the property stolen. A crime is an offense committed against the public and not merely against a private citizen. Where articles of property are stolen at one and the same time and at the same place, from several separate owners, there are as many wrongs committed against private citizens as there are separate owners, but they are trespasses when so considered. As against the public such an act is but one offense or crime."

In *People v. Jackson* (1978), 64 Ill. App. 3d 159, 380 N.E.2d 1210, the court refused to allow two convictions and sentences for felony theft to stand where the defendant had paid a single sum of money on one occasion for numerous items of property he knew to be stolen. The items had been stolen from two owners, and the defendant was charged by separate informations with two counts of felony theft. Each separate information charged unlawful possession of numerous but different items of property belonging to a different owner. Because the defendant had "in one act" (64 Ill. App. 3d 159, 161, 380 N.E.2d 1210, 1212) simultaneously exerted unauthorized control over several items of stolen property belonging to two owners, the court on appeal vacated one of the two judgments of conviction and the sentence imposed thereon. Similarly, in *People v. Cobetto* (1975), 32 Ill. App. 3d 696, 336 N.E.2d 505, *modified on other grounds* (1977), 66 Ill. 2d 488, 363 N.E.2d 854, where the defendant received on one oc-

casion property stolen from two separate burglaries, we held that the defendant had made but one reception of stolen property and could be found guilty of but one crime. In *Cobetto* we described the burglaries as "clearly two separate wrongs" (32 Ill. App. 3d 696, 699, 336 N.E.2d 505, 507) and the reception as "a single act" (32 Ill. App. 3d 696, 699, 336 N.E.2d 505, 507), or, in other words, as " 'one united, continuous and indivisible act' " (32 Ill. App. 3d 696, 700, 336 N.E.2d 505, 508).

In both *Cobetto* and *Jackson*, of course, the defendant had knowingly purchased goods stolen by another. In the instant case, however, there is no evidence the defendant either purchased goods he knew to be stolen or, on or about November 19, 1979, and January 5, 1980, stole them himself. In view of that circumstance and the proof actually adduced at trial, the defendant's knowing unauthorized exercise of control over the three automobiles, with intent permanently to deprive the owners of the use or benefit of them, occurring simultaneously on a date well after their initial disappearance, may be considered as it would have been had the State proved at trial that he had purchased the three vehicles on January 30, 1980, knowing they were stolen. As the burglaries in *Cobetto* were two separate wrongs and the reception a single act, the taking of the three automobiles in question here prior to January 30, 1980, may be seen as three separate wrongs, committed by we know not whom, and the defendant's unauthorized exercise of control over them on January 30, 1980, as a single act. In the same way that the defendant in *Jackson* in one act simultaneously exerted unauthorized control over several items of property belonging to two owners, the defendant in the case at bar may be said to have exerted unauthorized control in one act simultaneously over the three vehicles belonging to three owners. The defendant having committed but one physical act, more than one offense may not be carved from it. For these reasons we affirm the judgment as to one of the three counts of theft over $150 and the sentence imposed thereon, and we vacate the judgment as to the other two of the three counts and the sentences imposed thereon.

Affirmed in part; reversed in part.

WELCH and KARNS, JJ., concur.